## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **Andre D. Johnson,** | ) | **CASE NO. 1:12 CV 2609** |
| | ) | |
| **Petitioner,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **v.** | ) | |
| | ) | **Memorandum of Opinion and Order** |
| **Terry Tibbals,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### INTRODUCTION

*Pro se* Petitioner Andre D. Johnson filed the above-captioned Petition for a Writ of

Habeas Corpus under 28 U.S.C. § 2254.  Petitioner is incarcerated in the Mansfield Correctional

Institution, serving an eight-year sentence for unlawful sexual conduct with a minor.  Petitioner

asserts he received ineffective assistance of trial counsel, and lists three grounds for relief under

the Uniform Commercial Code.  For the reasons set forth below, the Petition is denied and this

action is dismissed.

### BACKGROUND

Petitioner met a fourteen-year-old female through the internet on the "My Space"

website.  *See State of Ohio v. Johnson*, No. 2008-L-015, 2008 WL 4216533 (Ohio App. 11 Dist.

Sept. 12, 2008).  On July 15, 2007, Petitioner went to the victim's house at 2:00 a.m., climbed

into her room through a window, and engaged in sexual conduct with the victim against her will.    Petitioner was arrested and charged with one count of unlawful sexual conduct with a minor and two counts of burglary.  *Id.* at *1.  He entered a plea of guilty on November 6, 2007 to one count of unlawful sexual conduct with a minor.  In exchange, the state agreed to drop the two counts of burglary.  Prior to sentencing, the trial court conducted a sexual predator hearing in accordance with Ohio's version of Megan's Law, Ohio Revised Code § 2950.09.[1]  In addition to this conviction, Petitioner had a prior conviction from 2002 for unlawful sexual conduct with a different fourteen-year-old girl.  He was declared to be a sexual predator and was sentenced to eight years in prison.

Petitioner filed a timely appeal of his conviction and sentence in the Ohio Eleventh District Court of Appeals.  He asserted two assignments of error:

> 1.  The trial court committed reversible error when it labeled the defendant-appellant a sexual predator against the manifest weight of the evidence.
>
> 2.  The trial court erred by sentencing the defendant-appellant to the maximum term of imprisonment.

*Id.* at *1.  The State argued the first assignment of error was moot because Petitioner's sexual

---

[1]    In 1994, New Jersey enacted "Megan's Law" after a young girl named Megan was sexually assaulted and killed by a repeat sexual offender who lived across the street from her family.  In 1996, the Ohio sex offender statute, Ohio Revised Code §2950, was modified by House Bill 180 to model Megan's Law.  Ohio's version of Megan's Law (effective July 1, 1997) modified existing sex offender classifications and registration requirements by classifying those who committed sexually oriented offenses as "sexually oriented offenders," "habitual sex offenders," and "sexual predators." Classification as a sexually oriented offender occurred by operation of law.  Megan's Law provided that before classifying an offender as a habitual sex offender or a sexual predator, the offender was provided a hearing.  Each classification had progressively more restrictive registration and community notification requirements.  *See Doe v. Dann*, No. 1:08 CV 220, 2008 WL 2390778, at *1 (N.D. Ohio June 9, 2008)(Gaughan, J.)

offender status had been reclassified after the enactment of the Adam Walsh Act, Ohio Revised Code § 2950.[2]  The Court of Appeals reviewed both grounds for relief and affirmed his conviction.  *Id.*  He did not appeal this decision to the Ohio Supreme Court.

Two years later, Petitioner attempted to reopen that appeal by filing an Application for Leave to File a Delayed Reopening of Appeal pursuant to Ohio Appellate Rule 26(B) on August 25, 2010.  He indicates he asserted that his appellate counsel was ineffective for not raising ineffective assistance of trial counsel in his direct appeal.  The Application was denied on September 16, 2010.  Petitioner filed a second Application for Leave to file a Delayed Reopening of Appeal pursuant to Ohio Appellate Rule 26(B) on January 10, 2011.  The State filed a response in opposition to his second request.  This request was denied on January 27, 2011.

One year after his last request to reopen his direct appeal was denied, and four years after his conviction was affirmed on appeal, Petitioner filed a motion seeking to file a delayed second appeal in the Eleventh District Court of Appeals on June 15, 2012 under Ohio Appellate Rule 5(A).[3]  *See State of Ohio v. Johnson*, No.  2012-L-068, 2012 WL 3793406 (Ohio App. 11 Dist.  Sept.  4, 2012).  He does not specify the grounds he attempted to assert but he does

---

[2]     The Adam Walsh Act, enacted on June 30, 2007, again amended Ohio Revised Code § 2950. The amendments changed the classification scheme and the attendant address registration, community notification and residency restriction requirements. Under Ohio's Adam Walsh Act, sexual offenders are classified as "Tier I," "Tier II," and "Tier III." An offender's classification is based solely on the offense of conviction.  *See Doe*, No. 1:08 CV 220, 2008 WL 2390778, at *2.

[3]     Petitioner titled his motion as a Motion for Delayed Appeal pursuant to Ohio Appellate Rule 5(A).  The delayed appeal he sought to file was a second direct appeal of his conviction and sentence.

-3-

indicate that he argued his second appeal was delayed because he needed to understand the

Uniform Commercial Code.  His Motion to File Delayed Appeal was denied.  *Id.*  He did not

appeal this decision to the Ohio Supreme Court.

## **HABEAS PETITION**

Petitioner then filed the within Petition for a Writ of Habeas Corpus pursuant to 28

U.S.C. §2254 on October 18, 2012.  He asserts four grounds for relief:

> 1.  Petitioner received ineffective assistance of trial counsel;
>
> 2.  Proof of claim of secured party status: secured party possesses
> [sic] all rights and remedies of a secured creditor under the
> Uniform Commercial Code;
>
> 3.  Debtor does hereby and herewith expressly covenant and agree
> that creditor shall not under any circumstances nor any manner
> whatsoever, be considered an accommodation party, surety for
> Debtor; and
>
> 4.  If Andre D. Johnson is held/detained as surety for the debt of
> Andre D. Johnson further consents and agrees with additional
> terms of this self executing contract security agreement.

(Pet. ECF No. 1 at 5-6).

With respect to his first ground for relief, Petitioner alleges that during his plea colloquy,

the judge produced a letter Petitioner had written to him in which Petitioner claimed there was

no physical evidence of DNA or fingerprints linking him to the crime scene.  The prosecutor

admitted this was true; however, Petitioner's attorney indicated to the Judge that Petitioner told

her he wore a condom during the rape and took it with him when he left.  Petitioner contends he

did not raise a claim of ineffective assistance of trial counsel in his direct appeal because his

appellate counsel did not assert it as a ground for relief.  He claims he attempted to file an

-4-

Application to Reopen his Appeal pursuant to Ohio Appellate Rule 26(B) due to ineffective assistance of appellate counsel but his application was denied.

Petitioner's allegations in support of his second, third, and fourth grounds for relief are similar.   He attaches numerous documents in which he declares himself to be both a debtor and a creditor of himself.  Petitioner contends he possesses all rights of a secured creditor under the Uniform Commercial Code ("UCC") as described in the "Constructive Notice (Non-Judicial)" he attached to his Petition, and states he provided "proof of claim superior to the claim of secured party as evidenced by enclosed/ attached ...[and] failure to prove said superior claim within said time frame constitutes conclusive presumption fact."  (Pet. ECF No. 1 at 5).  He states he "hold[s] harmless and [sic] indemnity agreement non negotiable private between the parties: secured party possess [sic] all rights and remedies of a secured creditor full security agreement and secured party filing acknowledgment endorsed."  (Pet. ECF No. 1 at 6).  He explains, "non negotiable notice to principal is notice to agent.  Notice to agent is presumed notice to principal.  Respectfully secured part [sic] possess all rights and remedies of a secured creditor."  (Pet. ECF No.1 at 6).  He indicates a full security agreement, naming him as the debtor and creditor of himself, is attached to the Petition.

## **STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which amended 28 U.S.C. § 2254, was signed into law on April 24, 1996 and applies to habeas corpus petitions filed after that effective date.  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *see Woodford v. Garceau*, 538 U.S. 202, 210 (2003); *Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999).  The AEDPA was enacted "to reduce delays in the execution of state and federal criminal

sentences, and 'to further the principles of comity, finality, and federalism.'" *Woodford*, 538 U.S. at 206 (citing *Williams v. Taylor*, 529 U.S. 362, 436 (2000)).  Consistent with this goal, when reviewing an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct.  *Wilkins v. Timmerman-Cooper*,  512 F.3d 768, 774-76 (6th Cir. 2008). The Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  A federal court, therefore, may not grant habeas relief on any claim that was adjudicated on the merits in any state court unless the adjudication of the claim either: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Wilkins*, 512 F.3d 768, 774-76 (6th Cir. 2008).

A decision is contrary to clearly established law under §2254(d)(1) when it is "diametrically different, opposite in character or nature, or mutually opposed" to federal law as determined by the Supreme Court of the United States.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  In order to have an "unreasonable application of ... clearly established Federal law," the state court decision must be "objectively unreasonable," not merely erroneous or incorrect.  *Id.* at 409.  Furthermore, it must be contrary to holdings of the Supreme Court, as opposed to dicta. *Id.* at 415.

A state court's determination of fact will be unreasonable under §2254(d)(2) only if it represents a "clear factual error."  *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003).  In other

words, a state court's determination of facts is unreasonable if its finding conflicts with clear and convincing evidence to the contrary. *Id.* "This standard requires the federal courts to give considerable deference to state court decisions." *Forensic v. Birkett*, 501 F.3d 469, 472 (6th Cir. 2007). AEDPA essentially requires federal courts to leave a state court judgment alone unless the judgment in place is "based on an error grave enough to be called 'unreasonable.'" *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

In addition, a federal court may not grant a petition for a writ of habeas corpus filed by a person in state custody unless "it appears that ... the applicant has exhausted the remedies available in the courts of the state...." 28 U.S.C. § 2254(b)(1)(A); *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995) (per curiam); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994). Exhaustion is fulfilled once a state supreme court provides a convicted defendant a full and fair opportunity to review his or her claims on the merits. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

To be properly exhausted, each claim must have been "fairly presented" to the state courts. *See e.g. Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Frazier v. Huffman*, 343 F.3d 780, 797 (6th Cir. 2003). Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim. *Wagner*, 581 F.3d at 414. Specifically, in determining whether a petitioner "fairly presented" a federal constitutional claim to the state courts, the claim must be presented to the state courts as a federal constitutional issue, not merely as an issue arising under state law. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984). Moreover, the claim must be presented to the state courts under the

-7-

same legal theory in which it is later presented in federal court.  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).  It cannot rest on a legal theory which is separate and distinct from the one previously considered and rejected in state court.  *Id.*   This does not mean that the applicant must recite "chapter and verse" of constitutional law, but the applicant is required to make a specific showing of the alleged claim.  *Wagner*, 581 F.3d at 414.

### **DISCUSSION**

As an initial matter, all of the Petitioner's grounds for relief are unexhausted.  He did not raise these claims in his direct appeal of his conviction.  With respect to his first ground for relief, Petitioner admits he did not raise it on direct appeal.  He twice attempted to reopen his appeal pursuant to Ohio Appellate Rule 26(B) to assert the claim but his requests for reopening were denied.  He did not appeal those decisions to the Ohio Supreme Court.  He also attempted to file a second direct appeal by filing a Motion for Leave to File a Delayed Appeal under Ohio Appellate Rule 5(A).  It is possible he attempted to assert his UCC claims in that appeal because he indicated to the Court of Appeals that his second appeal was delayed because he needed to familiarize himself with the UCC.  That Motion was denied on procedural grounds.  Petitioner did not appeal the denial of that Motion to the Ohio Supreme Court.  None of the grounds in this Petition were reviewed by the Ohio Court of Appeals or the Ohio Supreme Court.

If under state law there remains a remedy that a petitioner has not yet pursued, exhaustion has not occurred and the federal habeas court cannot entertain the merits of the claim.  28 U.S.C. § 2254(c).  Generally, a petitioner's failure to exhaust state court remedies requires dismissal of the entire petition to allow the petitioner the opportunity to return to state court to complete the review process.  *See Rose v. Lundy*, 455 U.S. 509, 522 (1982).  A habeas

-8-

court, however, does not need to wait for exhaustion to be completed if it determines that a return to state court would be futile.  *Lott v. Coyle*, 261 F.3d 594, 608 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).

Return to state court is futile and a procedural default occurs when a petitioner "fails to obtain consideration of a claim by a state court," either because he failed to raise the claim before the state court or because a state procedural rule prevented the state court from reaching the merits of the claim, and he has no available remedy left in state court. *Seymour v. Walker*, 224 F.3d 542, 549–50 (6th Cir. 2000)(citing *Wainwright v. Sykes*, 433 U.S. 72 (1977)).  When a claim is procedurally defaulted, federal habeas review is barred unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Here, Petitioner has no apparent remedy still available to him in state court for any of the grounds he asserts in this Petition.  He admits he did not raise his first ground for relief on direct appeal and his attempts to reopen his appeal were denied.  He attempted to file a second appeal, and that attempt also failed.  There is no mechanism available in state court for Petitioner to return to the Court of Appeals to assert this claim.  It is procedurally defaulted.

Petitioner's claims pertaining to violations of the UCC also were not submitted to the state courts for consideration.  Although Petitioner may have attempted to raise these grounds in his attempt to file a second direct appeal, his appeal was dismissed as untimely.  Petitioner has no other procedure through which he can assert these claims in the state court to challenge his criminal conviction.  Petitioner's second, third, and fourth grounds for relief also are

procedurally defaulted.

Although procedurally defaulted, the Court may excuse the default and consider the claims on the merits if Petitioner demonstrates that (1) there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error or (2) a fundamental miscarriage of justice would result from a bar on federal habeas review.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Hutchison v. Bell*, 303 F.3d 720, 735 (6th Cir. 2002); *Combs v. Coyle*, 205 F.3d 269, 274-75 (6th Cir. 2000).  To establish prejudice, a petitioner must demonstrate that the constitutional error "worked to his actual and substantial disadvantage."  *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995)(quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Moreover, because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense.  *Dretke v. Haley*, 541 U.S. 386, 392 (2004)(citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)).

Petitioner indicates the reason for his failure to exhaust his ineffective assistance of trial counsel claim is that his appellate counsel, who was different from his trial counsel, failed to raise it in his direct appeal.  The United States Supreme Court generally requires that a claim of ineffective assistance of appellate counsel be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.  *Murray*, 477 U.S. at 488–89.  Petitioner twice attempted to reopen his direct appeal on the basis of ineffective assistance of appellate counsel, but his requests were both denied.  Because Petitioner did not

-10-

exhaust a claim of ineffective assistance of appellate counsel, he cannot rely on this ground as cause to excuse his failure to raise ineffective assistance of trial counsel on direct appeal.

In addition, Petitioner does not assert that he is actually innocent of the charge.  He claims only that his trial counsel should not have volunteered an explanation of why there was no physical evidence placing him at the victim's house.  There is nothing in the Petition that suggests a fundamental miscarriage of justice would occur if this claim were not addressed. Plaintiff has failed to demonstrate cause and prejudice to excuse the default.

Petitioner indicates he failed to assert his UCC claims in a timely manner because he needed to study the Uniform Commercial Code.  To establish the existence of cause for a procedural default, the Petitioner must ordinarily show "that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule."  *Murray*, 477 U.S. at 484 (1986). "Such factors may include 'interference by officials,' attorney error rising to the level of ineffective assistance of counsel, and 'a showing that the factual or legal basis for a claim was not reasonably available.'"  *Hargrave–Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004)(quoting *McCleskey v. Zant*, 499 U.S. 467, 493–94 (1991)).  Petitioner's failure to understand the UCC is not a factor outside of the defense, nor did it impede his or his counsel's ability to assert these claims in his direct appeal. He has not established cause or prejudice for not raising these arguments in the state courts.

Finally, the Court notes Petitioner's claims under the UCC are not cognizable in a habeas corpus petition.  While Petitioner devotes many pages to making proclamations as the debtor and creditor of himself, and even appears to have filed a document with the Indiana Secretary of State, he makes no assertions which reference his criminal case.  The Uniform

Commercial Code, codified at Ohio Revised Code § 1302.01 *et seq.* , is not applicable to the facts of this case.  It governs only commercial transactions, does not provide substantive rights, and is wholly is inapplicable to criminal proceedings. *See United States v. Humphrey*, 287 F.3d 422, 435 (6th Cir.2002); *Chandler v. Curtis*, No. 05-cv-72608-DT, 2005 WL 1640083, at *2 (E.D. Mich. July 13, 2005).

Moreover, the UCC is a state statute.  Even if it did provide some protection against criminal prosecution or continued confinement under a conviction, which it does not, Petitioner's grounds for relief under the UCC would rely entirely on state law.  A claim based solely on an error of state law is not cognizable through a federal habeas corpus petition. *Hutchison v. Marshall*, 744 F.2d 44, 46-47 (6th Cir.1984).

**<u>CONCLUSION</u>**

For all the foregoing reasons, Petitioner's Application to Proceed *In Forma Pauperis* (ECF No. 2) is granted, the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254 (ECF  No. 1) is denied and this action is dismissed pursuant to Rule 4 of the Rules Governing Section 2254 Cases.  Further, the Court certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability.  28 U.S.C. § 2253; Fed.R.App.P. 22(b).

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 3/12/13